IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SEYMOUR CRIGHT, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-CV-00807-RAH |
| | ) | [WO] |
| NAVIGATOR INTERNATIONAL, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Seymour Cright, III brings this action against Navigator International, LLC and M1 Support Services after he was terminated for allegedly masturbating in the workplace while in the presence of a female co-worker.  Cright disputes the lewdness allegation and claims he was actually terminated for unlawful discriminatory reasons in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (ADA).  The Defendants have both moved for summary judgment on all claims.  (*See* Docs. 56, 59.)  With the motions having been fully briefed and thus ripe for decision, for the reasons more fully set forth below, the motions are due to be granted.

## II.    JURISDICTION AND VENUE

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391.

## III.    STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the materials in the record.  Fed. R. Civ. P. 56(a), (c).  The court must view the evidence and all reasonable inferences drawn therefrom "in the light most favorable to the nonmovant."  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Applicable substantive law identifies those facts that are material.  *Id.*  An issue is not genuine if it is unsupported by evidence or created by evidence that is "merely colorable, or is not significantly probative."  *Id.* at 249 (citations omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can satisfy its burden of proving the absence of a genuine dispute by citing to particular materials in the record or by showing the

nonmovant cannot produce evidence to establish an element essential to their case to which it has the burden of proof.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp.*, 477 U.S. at 322–23.  If the movant meets this burden, the burden shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial" with evidence beyond the pleadings.  *Celotex Corp.*, 477 U.S. at 324.  Generally, a "mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 252.

## IV.   BACKGROUND

The facts, stated in a light most favorable to Cright, are as follows:

### A. Cright's Employment History with Navigator International

Pertinent to this lawsuit, Navigator International, LLC was a subcontractor to M1 Support Services, a U.S. Army aviation support contractor located at Fort Rucker, Alabama.[1]  Cright is a black male who has been diagnosed with Autism and a bilateral sciatic nerve injury.

In February 2019, Navigator hired Cright as a Service Attendant at Knox Field at Fort Rucker.   After he was hired, Cright completed a "Voluntary Self-Identification of Disability" form and checked the box indicating that he had a disability, although he did not disclose his specific diagnosis.  (*See* Doc. 58-13.)

---

[1]  Fort Rucker's name was recently changed to Fort Novosel.

Cright claims that, after he was hired, he also informed several co-employees about his disabilities, including his supervisors and his co-worker Cynthia Peoples.

On June 4, 2020, Cright received a written warning for "[l]oafing, loitering or hiding; leaving work station without supervisor's permission for reasons not connected with performance of job" after a co-worker discovered Cright sitting alone in a room with lotion and paper towels.  (*See* Docs. 58-15, 58-16, 58-17.)  The employee who observed Cright—Gavin Free—provided a written statement stating that he had observed Cright sitting in a corner of the warehouse, and after he knocked on the door, Cright "proceeded to stand up and button his pants and pull his shirt down over his waistline."  (Doc. 58-16.)  Free went on to state that he observed that Cright had "lotion all over his hands" and saw "a bottle of lotion" and paper towels "on the counter by the chair [Cright] was sitting in."  (*Id.*)  Cright generally admits that this incident occurred and that he was not located where he was supposed to be, but claims he was just "resting his eyes" and that he likely pulled up his pants because he was not wearing a belt.  (*See* Doc. 58-40 at 89, 91.)

**B. Accusation of Cright Masturbating In Front of Co-Worker and Subsequent Termination**

On December 1, 2020, Cynthia Peoples, a co-worker, provided a written statement to her supervisor alleging that Cright had masturbated at work while sitting

at a desk across from her.[2]  (Doc. 58-19 at 2.)  Peoples claimed she observed Cright moving his right arm in a "quick up and down motion" and that Cright "was constantly checking to see if [she] was looking at him."  (*Id.*)  After "several minutes" Peoples "heard what sounded like [Cright] zipping up his pants and then using a paper towel to wipe himself."  (*Id.*)  Peoples took a video recording of Cright's actions and reported the incident to her supervisor, Brad Horne, and M1's Human Resource Officer, Tanya Owens Harris, on November 30, 2020. (*Id.*; *see also* Doc. 62 (video recording of Cright taken by Peoples).)

On December 2, 2020, Harris called a meeting with Cright to discuss Peoples's allegation.  Cright was accompanied to the meeting by Tyrie Jones, a union shop steward.  Cright initially denied the accusation and provided Harris with a written statement claiming that he actually had been scratching his thigh. (Doc. 58-20.)  That same day, Cright provided a second written statement, stating, "I did not masturbate in the tool room.  The stress has gotten to me and I feel overwhelmed right now.  I failed my evaluation test Friday and today someone has made a false accusation about me.  I work hard everyday because I don't take failing well."  (Doc. 51-21.)

The next day, on December 3, 2020, Cright approached Horne and asked to speak with him privately.  (Doc. 58-25; Doc. 58-40 at 169.)  According to Horne,

---

[2] In September 2020, Navigator promoted Cright to a Material Specialist position.

Cright told him: "What they were saying I was doing out here Sunday, yeah I was doing that"; that he was stressed "because of not getting a good evaluation on the supply skills test" and that "the only way to relieve that from his mind was to do what he did"; and that Cright "was in a 'bad mental state' and needed help." (Doc. 58-25.)  Cright does not deny that he spoke with Horne on December 3, 2020, but claims that he only requested the helpline number during their conversation. (*See* Doc. 58-40 at 152–53.)

After their conversation, Horne took Cright to Harris's office to get the helpline number.  While there, according to Harris, she asked Cright what he had told Horne, to which Cright responded, "yes I told Brad I did exactly what everybody said I did."  (Doc. 58-24.)  After Harris asked Cright to clarify, Cright hesitated and then said "masturbating."  (*Id.*)  According to Harris, Cright then went on to say that he was "disappointed in himself for not passing the supply training test and he was under a lot of stress and that was how he knew to relieve his stress."  (*Id.*)  He then continued by saying "wow it felt good to talk about because he can't talk to his family members and he is not good at talking to people."  (*Id.*)  Harris told Cright that he would need to complete another statement because he was confessing to the "lewd act," and Cright said he would do so.  (*Id.*)

Cright then provided the following written statement: "On Sunday I was masturbating.  I know its bad but my mental state and the stress was getting to me

6

due to failing my test.  My past history of my life came back to me in the back of my head the thoughts of failure was in my mind." (Doc. 58-23.)  As Cright was writing this statement, Harris asked Cright if he wanted a union shop steward present, to which he said no. (Doc. 58-24.)  Harris nevertheless "felt uneasy about not having a Union Rep there" and got Jak Keener to come to her office. (*Id.*)  After Keener arrived and spoke with Cright, Harris claims that Cright "admitted again to masturbating and needing help with dealing with stress"[3] but did not finish his written statement. (*Id.*)

Cright does not dispute that he provided this written statement admitting to the lewdness accusation, but claims that Harris told him that he would need to provide a statement about why he needed the helpline and gave him ideas on what to write. (Doc. 58-40 at 153–54.)  After he finished writing the statement admitting to masturbating while at work, Cright explained:

> And when I got through writing down everything and I'm looking at everything and saying this isn't what I want to have, I put the paper down and asking for a shop steward, which is when Jak came.  And when Jak came, he looked at the paper.  He said, Are you trying to change your statement?  I told him no.  And he asked Tanya, Are you going to be using this statement?  And she also said no.  So that was the end of it.  And I got the number for the help line and I just gone on from there.

---

[3] Keener does not recall masturbation being specifically mentioned during this meeting. (*See* Doc. 58–41 at 30.)

(*Id.* at 154.)   It is undisputed that Cright did not sign this written statement. (*See* Doc. 58-23.)

Cright was sent home for several days and then was formally terminated by Navigator via letter on December 9, 2020, for violating workplace rules and state law prohibiting "[p]ublic lewdness."  (*See* Doc. 58-26.)  According to Navigator, the decision to terminate Cright was made by David Patterson, Navigator's chief of staff and general manager, based at the Huntsville office.  (*See* Doc. 58-43 at 1, 3.) Patterson claims that Mike Sutterfield, the program manager responsible for administering Navigator's day-to-day operations at Fort Rucker, provided him with the following documents and information related to the incident:

> (1) the signed complaint by Cynthia Peoples; (2) the video taken by Ms. Peoples, which corroborated her complaint; (3) written statements from two individuals (Brad Horne and Tanya Owens Harris) indicating that Mr. Cright had admitted the misconduct to them; (4) a handwritten statement by Mr. Cright, stating "On Sunday I was masturbating"; and (5) a past disciplinary action where Mr. Cright had been found alone in an unusual location with lotion and paper towels nearby.

(*Id.* at 2–3.)  According to Patterson, after reviewing this information, he made the decision to terminate Cright based on his "honest belief" that "Cright had been masturbating at work in the supply room with Cynthia Peoples on November 29, 2020." (*Id.* at 3.)  Additionally, Patterson claimed that he was "not aware of any [Navigator] employee other than Mr. Cright who has ever been accused of masturbating while at work." (*Id.* at 4.)

## V.   DISCUSSION

Cright brings discrimination claims under Title VII and the ADA concerning his termination.  Cright bears the ultimate burden of proving by a preponderance of the evidence that the Defendants discriminated unlawfully against him. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008).

To survive a motion for summary judgment, a plaintiff asserting a claim for unlawful discrimination in violation of Title VII or the ADA must present sufficient facts to permit a jury to rule in his favor.  *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) (*Lewis I*) (Tile VII); *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021) (ADA).  A plaintiff may satisfy his burden in three ways: (1) by presenting direct evidence of discriminatory intent; (2) by satisfying the *McDonnell Douglas*[4] burden-shifting framework; or (3) by presenting "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination."  *Id.* at 1220, n.6.; *see also Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (addressing the "convincing mosaic" analysis).  Cright does not present direct evidence of discrimination, but he does claim that he has satisfied his requisite burdens under both the *McDonnell Douglas* framework and convincing mosaic analysis.

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, Cright must first establish a *prima facie* case of discrimination, which creates a presumption of unlawful discrimination by the Defendants. *See Lewis I*, 918 F.3d at 1220, 1222. The Defendants[5] may then rebut that presumption by articulating legitimate, nondiscriminatory reasons for Cright's termination. *See id.* at 1221. If rebutted, the burden then shifts to Cright to produce evidence sufficient to create a genuine issue of material fact that the Defendants' articulated reasons are a pretext for unlawful discrimination. *See id.*

Aside from the *McDonnell Douglas* framework, Cright can also survive summary judgment by presenting a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision-maker. *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (citation omitted). To succeed under the convincing mosaic analysis, Cright must "point[] to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Id.* (citing *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*Lewis II*)).

---

[5] Since summary judgment is due to be granted for other reasons, the Court pretermits any discussion of Cright's joint employer theory.

As it concerns the *McDonnell Douglas* framework, the Court assumes for summary judgment purposes that Cright can meet his *prima facie* burden and therefore focuses on the Defendants' stated reason for Cright's termination: that Patterson believed, based on the information given to him by others, that Cright had been observed masturbating in the workplace by a female co-worker.  Once the Defendants identify this legitimate, nondiscriminatory reason for Cright's termination, the burden shifts back to Cright to demonstrate that the reason given by the Defendants was not the real reason for his termination.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  Cright bears this same burden in rebutting a legitimate, nondiscriminatory reason under the convincing mosaic analysis.  *See Lewis II*, 934 F.3d at 1185; *Smith*, 644 F.3d at 1341.  When, as in this case, the employer's "proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *See Chapman*, 229 F.3d at 1030.  To satisfy his burden of showing pretext, Cright must demonstrate "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's rationale."  *See Holland v. Gee*, 677 F.3d 1047, 1055–56 (11th Cir. 2012) (citation omitted); *see also Lewis II*, 934 F.3d at 1185–87, 1189 (finding that the plaintiff had presented sufficient evidence of pretext under the conceiving mosaic analysis).

As to pretext, Cright provides little evidence.  Rather, Cright claims that the accusation by his co-worker was false because he was actually rubbing his leg up and down, not masturbating—although he acknowledges that it was reasonable for his co-worker to perceive his actions as being indicative of masturbating.  But the pertinent inquiry at this stage is limited to whether the Defendants (the decision-maker) believed Cright was guilty of the alleged misconduct and if so, whether that was the reason behind his termination; that Cright did not actually engage in the misconduct is irrelevant.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." (citation omitted)).  Thus, Cright's burden at this stage is to demonstrate that Patterson did not actually believe that Cright was guilty of misconduct and that discriminatory animus was the real reason for his termination— neither of which he has shown.

Instead of rebutting the reason head on, Cright resorts to citing to claimed statements by his supervisors who allegedly referred to him as "stupid" and "slave boy."  (*See* Doc. 72 at 18 (citing Doc. 61-1 at 29–30).)  These statements, if made, are insufficient to rebut the Defendants' stated reason for his termination— especially considering that Cright does not allege or provide evidence that these

supervisors had any involvement in the lewdness allegation and termination at issue—and therefore fall far short of advancing discrimination claims under Title VII and the ADA in the context of his termination.  *See Jones v. Bessemer Bd. of Educ.*, 570 F. Supp. 3d 1099, 1109 (N.D. Ala. 2021) ("[C]omments by non-decisionmakers do not raise an inference of discrimination . . . ." (quoting *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999))).

Recognizing the evidentiary shortcoming in presenting evidence of discriminatory intent by the decision-maker, Cright also invokes the cat's paw theory of liability[6] and argues in a conclusory manner that "Patterson summarily accepted the discrimination and false accusations made by Ms. Tanya Harris." (*See* Doc. 72 at 16.)  To succeed under the cat's paw theory, Cright must show that the decision-maker (Patterson) followed a "*biased recommendation* without independently investigating the complaint" against Cright.  *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (emphasis added).  The problem with Cright's assertion of the cat's paw theory is that Cright has offered no evidence that Harris—or anyone else involved in the lewdness allegation—harbored any discriminatory animus towards Cright or even recommended that Cright be

---

[6] The "cat's paw" theory applies in cases where an employer takes an adverse employment action against the plaintiff based on a biased recommendation by a non-decision-maker.  *See Hanford v. Geo Grp., Inc.*, 345 F. App'x 399, 406 (11th Cir. 2009) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir.1999)).

terminated.  *See id.* at 1331 (explaining that when a biased recommender is not the actual decision-maker, the plaintiff must show causation by "prov[ing] that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee" (citation omitted)).  Thus, Cright has not shown that Patterson acted as a mere "cat's paw" in deciding to terminate Cright.

Moreover, Cright has failed to rebut Patterson's belief that Cright had masturbated at work in front of a co-worker.  And again, Cright acknowledges that even his version of the facts (that he was rubbing his leg up and down) could lead to a reasonable perception that he was masturbating.  Having failed to rebut the legitimate, nondiscriminatory reason for his termination or otherwise shown a convincing mosaic of discrimination, the Defendants' motion for summary judgment is due to be granted on his claims brought under Title VII and the ADA.

## VI.   CONCLUSION

Based on the forgoing, it is **ORDERED** that the Motions for Summary Judgment (Docs. 56, 59) are **GRANTED**.

DONE, on this the 20th day of July, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

14